FUNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **BANNEKER VENTURES, LLC,** | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 13-391 (RMC) |
| **JIM GRAHAM,** *et al.*, | ) | |
| Defendants. | ) | |

**OPINION**

The critical events in this case occurred at a time when Jim Graham was both a Member of the District of Columbia Council and the Washington Metropolitan Area Transit Authority (WMATA) Board of Directors. Banneker Ventures, LLC, a real estate developer, had an exclusive right to negotiate a development agreement for the improvement of property owned by WMATA. Banneker contends that Mr. Graham substantially interfered so that a final agreement was never reached and WMATA later sold the property to another developer. Banneker filed suit against Mr. Graham, in both his official and personal capacities, and the Office of the General Counsel for the D.C. City Council represented him. Subsequently, all claims against Mr. Graham in his official capacity were dismissed. The Office of General Counsel moves to withdraw, asserting that it has no duty to represent Mr. Graham in his personal capacity. Mr. Graham opposes. Having carefully considered all arguments, the Court will grant the motion.

**I. FACTS**

In 2007, WMATA began a bid process to improve real property it then owned along the 700 and 800 blocks of Florida Avenue, N.W., Washington, D.C. WMATA selected

1

Banneker Ventures, LLC to develop the site and it gave Banneker the exclusive right, for a limited period of time, to negotiate a Joint Development Agreement. A final agreement was never reached, and in July 2011, WMATA sold the site to JBG Construction. Subsequently, Banneker filed this suit alleging, *inter alia*, that Mr. Graham unlawfully interfered with the negotiations by insisting that LaKritz Adler Development, LLC (LAD), a major contributor to Mr. Graham's campaign and constituent services fund, become the selected developer for the site. Am. Compl. [Dkt. 18] ¶¶ 4-11, 26, 127. Banneker also alleges that "Graham offered his vote as a member of the D.C. Council to approve a lucrative D.C. lottery contract, in exchange for Banneker withdrawing" from the WMATA project. *Id.* ¶ 7.

Banneker sued Mr. Graham in his official and personal capacities as well as WMATA, Joshua Adler, Robb LaKritz, and LAD. The Amended Complaint alleged eight counts:

> Count I–Breach of Contract (against WMATA);
>
> Count II–Breach of Covenant of Fair Dealing (against WMATA);
>
> Count III–Tortious Interference with a Prospective Economic Advantage (against Messrs. Graham, LaKritz, Adler, and LAD);
>
> Count IV–Tortious Interference with Contract (against Messrs. Graham, LaKritz, Adler, and LAD);
>
> Count V–Unjust Enrichment (against WMATA);
>
> Count VI–Unlawful Restraint of Trade (against Messrs. Graham, LaKritz, and Adler);
>
> Count VII–Fraud, Constructive Fraud, and Negligent Misrepresentation (against WMATA); and
>
> Count VIII–Civil Conspiracy (against all Defendants).

*Id.* ¶¶ 203-330.

This Court first dismissed WMATA, *see* Op. [Dkt. 34]; Order [Dkt. 35], and then dismissed Messrs. Graham, Adler, LaKritz, and LAD, *see* Op. [Dkt. 39]; Order [Dkt. 40]. Banneker appealed in part.[1] While the D.C. Circuit affirmed dismissal of the fraud claim against WMATA,[2] it reversed dismissal of other claims. Specifically, the Circuit reinstated (1) Banneker's tort claims against Mr. Graham; (2) its tort claims against Mr. LaKritz, Mr. Adler, and LAD; and (3) its contract claims against WMATA and remanded for further proceedings. *See Banneker Ventures, LLC v. Graham*, No. 14-7030 (D.C. Cir. Aug. 18, 2016); Mandate [Dkt. 44]. At this juncture, the following claims remain:

> Count I–Breach of Contract (against WMATA);
>
> Count II–Breach of Covenant of Fair Dealing (against WMATA);
>
> Count III–Tortious Interference with a Prospective Economic Advantage (against Messrs. Graham, LaKritz, Adler, and LAD);
>
> Count IV–Tortious Interference with Contract (against Messrs. Graham, LaKritz, Adler, and LAD); and
>
> Count VIII–Civil Conspiracy (against Messrs. Graham, LaKritz, Adler, and LAD).

After some months of attempted mediation, the parties informed the Court that mediation was unsuccessful. The Court set a deadline for Defendants to file Answers to the Amended Complaint. However, before Answers were filed, the Office of the General Counsel

---

[1] Banneker did not appeal the dismissal of Count V, Count VI, or the dismissal of all claims against Mr. Graham in his official capacity. *See Banneker Ventures, LLC v. Graham*, No. 14-7030, Slip Op. at *31 n.11 (D.C. Cir. Aug. 18, 2016).

[2] The Circuit did not address the dismissal of the civil conspiracy claim against WMATA. Even so, Count VIII (civil conspiracy) remains dismissed as to WMATA. There is no independent action in the District of Columbia for civil conspiracy; it is a means to establish vicarious liability for an underlying tort. *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000) (citing *Griva v. Davison,* 637 A.2d 830, 848 (D.C. 1994)). Without an underlying tort claim against WMATA, the civil conspiracy claim against WMATA fails.

for the Council of the District of Columbia (OGC) filed a motion to withdraw as counsel for Mr. Graham. Mot. to Withdraw [Dkt. 55]; *see also* Reply [Dkt. 64]. Mr. Graham opposes the motion to withdraw. *See* Opp'n [Dkt. 61].[3] The Court stayed the case pending the resolution of this issue. *See* Minute Order (Mar. 10, 2016).

## II. LEGAL STANDARDS

### A. Jurisdiction

The Court has jurisdiction in this case under the Washington Metropolitan Area Transit Regulation Compact. *See* D.C. Code § 9-1107.01 (formerly D.C. Code § 1-2431) (adopting and amending the Compact). The Court also has diversity jurisdiction in this case. *See* 28 U.S.C. § 1332(a) (diversity jurisdiction applies to suits between citizens of different states where the amount in controversy exceeds the sum of $75,000).[4]

### B. Counsel's Withdrawal

The withdrawal of a lawyer is governed by Local Civil Rule 83.6. When, as here, lawyers wish to withdraw from representation but the client disagrees and has no other attorney representing him, a formal motion must be filed and granted by the Court:

> If a trial date has been set, or is a party's written consent is not obtained, or if the party is not represented by another attorney, an attorney may withdraw an appearance for a party only by order of the court upon motion by the attorney served upon all parties to the case. Unless the party is represented by another attorney or the

---

[3] Mr. Graham also sought leave to file a surreply. *See* Mot. for Leave [Dkt. 66]. Because surreplies are disfavored in this District, the motion will be denied. *See Crummey v. Social Sec. Admin.*, 794 F. Supp. 2d 46, 62 (D.D.C. 2011).

[4] Banneker seeks to recover $100 million. *See* Am. Compl. at 99 (Relief Requested). Further, the parties are citizens of different states. Banneker has only a single member, Omar Karim, who is domiciled in Maryland. *See* Banneker Notice of Citizenship [Dkt. 37]. Mr. Graham is a resident of the District of Columbia. *See* Graham Notice of Citizenship [Dkt. 36]. Mr. LaKritz is a resident of Virginia, Mr. Adler is a resident of New Hampshire, and LAD is a citizen of Virginia and New Hampshire. *See* LaKritz Notice of Citizenship [Dkt. 38].

>motion is made in open court in the party's presence, a motion to withdraw an appearance shall be accompanied by a certificate of service listing the party's last known address and stating that the attorney has served upon the party a copy of the motion and a notice advising the party to obtain other counsel, or, if the party intends to conduct the case *pro se* or to object to the withdrawal, to so notify the Clerk in writing within seven days of service of the motion.

LCvR 83.6(c). A court may deny an attorney's motion to withdraw if granting it "would unduly delay trial of the case, or be unfairly prejudicial to any party, or otherwise not in the interest of justice." LCvR 83.6(d).

### III. ANALYSIS

OGC contends that because the claims against Mr. Graham in his official capacity have been dismissed and the only claims remaining against him are for liability in his personal capacity, OGC's statutory obligation to represent Mr. Graham has concluded. Further, OGC argues that the Council has no obligation under Council Rule 263[5] to continue representing Mr. Graham. The only remaining claims against Mr. Graham are claims against him in his personal capacity, *i.e.*, Counts III (tortious interference with prospective economic advantage), IV (tortious interference with contract), and VIII (civil conspiracy), as to which the Council has no legal interest.

Mr. Graham argues that withdrawal of OGC will have a materially adverse effect on his interests and unfairly prejudice his case because he has relied on OGC for representation since the outset of the litigation and he may not be able to afford private counsel. Obviously, withdrawal of OGC at this point will not delay trial: discovery has not begun and no schedule

---

[5] Mr. Graham's reliance on Council Rule 263 is misplaced. That Rule delineates the scope of OGC's authority as an officer of the Council. To the extent that Council Rule 263 obligates OGC to undertake a particular representation, that obligation runs solely to the Council itself and not to an individual former member of the Council sued in his personal capacity.

has been set. The question is whether Mr. Graham would be unfairly prejudiced if the Council's lawyers did not continue to represent him. "Unfair prejudice" in this context is a hefty standard. From the standpoint of a litigated case, this one is almost brand new. New lawyers for Mr. Graham will be able to fashion his Answer to the Amended Complaint and to decide on strategies for discovery and trial. Mr. Graham is not losing the only group of lawyers who are, or could become, knowledgeable about the underlying disputes or someone of special expertise in an odd corner of the law. Mr. Graham's need to find new counsel may require time, effort, and funding. These are burdens facing every litigant and do not constitute undue prejudice.

Because OCG's withdrawal will not delay trial of the case, will not be unfairly prejudicial to any party, and will not be otherwise contrary to the interest of justice, the Court will grant the motion. Mr. Graham will be provided time to obtain new counsel or file a notice that he intends to proceed pro se.[6]

Banneker also weighed in on the issue of OGC's withdrawal. While Banneker does not oppose the motion to withdraw, it asks the Court to impose on OGC the obligation to respond to discovery as a party under the Federal Rules of Civil Procedure, instead of as a third party. *See* Banneker Reply [Dkt. 63]. Banneker cites no authority for this proposition. Because the D.C. Council was not and is not a party here, discovery on the Council itself will have to be conducted through means applicable to third parties. Notably, OGC has pledged to "fully comply with any third-party discovery obligations it may have and will fully cooperate with new counsel for Defendant Graham, or with Defendant Graham himself if he decides to proceed pro se, so that Defendant Graham, as a party, can fulfill his discovery obligations." Reply at 10.

---

[6] Mr. Graham is a lawyer. He is an inactive member of the D.C. Bar, and he holds a Juris Doctor from the University of Michigan Law School and an LLM from Georgetown University Law Center. *See* Opp'n at 2.

## IV. CONCLUSION

For the reasons set forth above, the motion to withdraw as counsel filed by the Office of the General Counsel for the D.C. City Council [Dkt. 55] will be granted. A memorializing Order accompanies this Opinion.


Date:  March 31, 2016                              /s/
                                             ROSEMARY M. COLLYER
                                             United States District Judge